James Edward CARTER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7709.

United States Court of Appeals
Tenth Circuit.

June 24, 1964.

Fred A. Gipson, Oklahoma City, Okl., for appellant.

Benjamin E. Franklin, Asst. U. S. Atty. (Newell A. George, U. S. Atty., on brief), for appellee.

Before MURRAH, Chief Judge, HILL, Circuit Judge, and ARRAJ, District Judge.

MURRAH, Chief Judge.

The defendant appeals from a judgment after conviction on a two-count indictment, the first of which charged a conspiracy to violate § 1791, Title 18 U.S.C., by an agreement to introduce or attempt to introduce upon the grounds of a Federal penal institution, "five jars of instant coffee without the knowledge and consent of the warden or superintendent of said Penitentiary." The second count charged the substantive offense. The substantive statute provides: "Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom any thing whatsoever, shall be imprisoned not more than ten years." 18 U.S.C. § 1791. The applicable regulation provides: "The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution * * * any thing whatsoever without the knowledge and consent of the warden or superintendent of such Federal penal or correctional institution is prohibited." Title 28, Code of Federal Regulations, § 6.1.

Appellant first attacks the statute as an unconstitutional delegation of legislative authority. The contention seems to be that since violation of the statute is made to depend upon the violation of a rule or regulation of the Attorney General, the law itself is an unconstitutional delegation of the law-making function.

We know, of course, that Congress may not penalize the violation of an administrative rule or regulation which it has no constitutional power to authorize. See: Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; and Schechter Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. It is equally clear, we think, that Congress may penalize the violation of an administrative rule or regulation which it is constitutionally empowered to authorize. See: United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563. In the exercise of its law-making function, Congress has committed to the Attorney General the "control and management" of Federal penal and correctional institutions, and has vested him with the duty and authority to "promulgate rules for the government thereof." 18 U.S.C. § 4001. In the performance of his statutory duty, the Attorney General undoubtedly may provide by regulation that nothing shall be brought into or taken out of a Federal penal institution

without the knowledge and consent of the warden or superintendent of such institution. And, the regulation does not lose its administrative character simply because Congress has seen fit to make its violation a public offense. See: United States v. Grimaud, ibid; and United States v. Ruckman, D.C., 169 F.Supp. 160. The validity of the regulation is unquestioned here—the power of Congress to penalize its violation is unquestionable.

The second point on appeal is that the proof in support of the two-count indictment is at fatal variance with the allegations therein. The conspiracy count of the indictment alleged that the defendants, Robert Eldon Ludlum, Jr. and appellant-Carter, planned and arranged for the introduction onto the grounds of the United States Penitentiary at Leavenworth, Kansas, contrary to the rules and regulations promulgated by the Attorney General, of five jars of instant coffee, without the knowledge or consent of the warden or superintendent of said Penitentiary. It is then alleged that upon formation of the agreement and to effect its object, the defendants committed two overt acts: (1) When the defendant Ludlum came to the Penitentiary at Leavenworth on April 4, 1962, appellant Carter gave him $10, $5 of which was for the purchase price of coffee and $5 to be retained by Ludlum for his services in purchasing and introducing the same into the Penitentiary; and, (2) on April 6, 1962, defendant Ludlum brought into the United States Penitentiary five jars of instant coffee, contrary to the rules and regulations governing the institution, and delivered the same to appellant Carter. The second count alleged the introduction of the five jars of coffee, as aforesaid.

In support of the allegations in the indictment, Ludlum testified that he was employed as a truck driver during the week of April 2 through 6, 1962; that in the course of his duties on April 4, 1962, he drove his truck from Lawrence, Kansas to the Federal Penitentiary at Leavenworth; that while unloading the truck at a warehouse on the Penitentiary grounds, Carter approached him, gave him $10 and asked him to buy $5 worth of instant coffee and keep $5 for himself; that the coffee was to be left in the cab of the truck for appellant to pick up the following day; that the next day he did purchase five jars of instant coffee from a grocery store in Lawrence, drove to the warehouse on the Penitentiary grounds, and left the package containing the coffee in the cab of his truck; and, that after appellant and other prisoners had unloaded the truck, he observed that the five jars of instant coffee had been removed from the cab. The supervisor at the Penitentiary testified that he became suspicious of appellant during the unloading process and upon surveillance, found him with the sack containing the jars in his possession; that he took appellant to an officer and pursuant to instruction, placed the jars in a box, sealed it, and put the box in a locker.

During the trial, the box was brought into court, identified by the supervisor and opened in the presence of the jury. When the coffee jars were opened, they were found not to contain coffee, but dirt. The Government took the position and the trial Court held that since the introduction of "any thing whatsoever" without the knowledge and consent of the warden is condemned, "whether or not coffee per se was introduced is not material, so long as any thing whatsoever was attempted to be introduced."

■ While intent to commit the substantive offense is an essential ingredient of the crime of conspiracy, the offenses are separate and distinct and proof of one is not necessarily proof of the other. See: Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489; Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503; and Callanan v. United States, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312. The gist of a criminal conspiracy is an agreement to violate a law of the United States and one or more overt acts by one or more of the conspirators to effect the

objects of the unlawful agreement. The requisite overt act need not be the substantive offense which is the object of the conspiracy—indeed, it need not in itself be a wrong. See: Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23.

■■ The Government made a case for the jury on the conspiracy count by proof of an agreement to introduce coffee into the Penitentiary grounds without the knowledge and consent of the warden, and payment of the money to effectuate the object of the agreement. The payment of money was one of the steps in effectuation of the objects of the conspiracy. It was unnecessary to prove the commission of the substantive offense alleged as the second overt act to effectuate the object of the conspiracy. In these circumstances, we need not decide whether the proof supported the allegations of the substantive count in the indictment, for the sentences on the two counts were made to run concurrently, and the sentence on the substantive count does not exceed the sentence on the conspiracy count. See: Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321; and McMurray v. United States (10 CA), 298 F.2d 619.

After the case was given to the jury and it had deliberated one hour and twenty minutes before 6:00 p. m., the jury was called into the courtroom to be excused for the night. Before excusing the jury, they were instructed: "In order to bring twelve minds together to an unanimous result you must examine the questions submitted to you with candor and frankness and with a proper deference to and a regard for the opinions of each other. That is to say, in conferring together each of you should pay due attention and respect to the views of others and listen to each other's arguments with a disposition to reexamine your own views. If a much greater number is in favor of a verdict, either for the plaintiff or for the defendant, each dissenting juror ought to consider whether his appraisal of the weight of the evidence is a correct one, since it makes no effective impression upon the minds of so many equally honest, equally intelligent, fellow jurors, who bear the same responsibility, serve under the same sanction of the same oath and have heard the same evidence with the same attention and with equal desire to arrive at the truth." Appellant complains of this instruction as coercive and plain error.

■ Instructions of this kind and tenor have become known as the "Allen charge," after Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, and have been condemned as a " 'dynamite' charge * * * designed to blast loose a dead-locked jury." Judge Wisdom in Green v. United States, 5 Cir., 309 F.2d 852, 854. And see: Judge Brown dissenting in Huffman v. United States, 5 Cir., 297 F.2d 754, 759. In the Green case, the charge was given before the jury retired, but Judge Wisdom thought that "[n]o matter when the charge was made, it gave the jury false notions of the validity and force of majority opinion; it tended to limit full and free discussion in the jury room; it prejudiced the right of an accused to a hung jury and a mistrial by tending to stifle the dissenting voices of minority jurors." Ibid, 309 F.2d p. 856. We have approved instructions in this tenor, even when the jury appeared to be dead-locked, provided that the jury is made to understand that no juror is to be coerced to agree against his convictions. See: Thompson v. Allen, 10 Cir., 240 F.2d 266. When the challenged instruction was given in this case, the jury had not indicated its inability to agree upon a verdict. The instruction was apparently supplementary and intended to indoctrinate, not to coerce. Moreover, no objections were made to the instruction, and it was not plain error.

Affirmed.