**William T. X. FULWOOD**

v.

**Myrl ALEXANDER, Director, Federal Bureau of Prisons,**

and

**Jacob J. Parker, Warden, United States Penitentiary, Lewisburg, Pennsylvania.**

**Civ. A. No. 9811.**

United States District Court

M. D. Pennsylvania.

April 28, 1967.

William T. X. Fulwood, pro se.

Bernard J. Brown, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for defendants.

## MEMORANDUM

FOLLMER, District Judge.

William T. X. Fulwood, a prisoner at the United States Penitentiary, Lewisburg, Pennsylvania, originally filed this action, in forma pauperis, in the United States District Court for the District of Columbia. Subsequently the cause was transferred to this district. Although Fulwood designated this as a petition for writ of habeas corpus, it appears to be an action in the nature of mandamus under 28 U.S.C. § 1361. Service of process has been made and the defendants have filed an answer, with certain documents attached as exhibits, and request that judgment be entered in their favor.

Fulwood's complaint is divided into six numbered paragraphs. Each of these paragraphs will be discussed separately. Since the plaintiff is an inmate of a penal institution, the normal legal niceties are lacking. Accordingly, the complaint will be given a reasonably liberal reading in ascertaining whether claims have been stated upon which relief could be granted. Roberts v. Pegelow, 313 F.2d 548, 550 (4th Cir. 1963); Long v. Katzenbach, 258 F.Supp. 89, 91 (M.D.Pa.1966).

In the first paragraph Fulwood states that on May 12, 1966, he was returned to the Lewisburg Penitentiary. Upon his arrival, his personal property was taken by the prison authorities. On May 31, 1966, he received a memorandum stating he could obtain his property which was approved, which property Fulwood received on June 1, 1966.

Exhibit B–1 of the defendants' answer shows that all personal property, except certain specifically designated religious articles were kept by or returned to Fulwood on the date of his readmission to the penitentiary. On May 17, 1966, according to defendants' Exhibit

B–2, Fulwood was advised he could have certain religious books and a letter from Elijah Muhammad. Defendants' Exhibit B–3 lists the property approved for his personal use and requests that he pick up the material if it is desired. Apparently this is the property which Fulwood admits was returned.

█ It is clear that there is nothing to the allegations contained in the first paragraph. Obviously, the prison authorities, in maintaining effective prison security, have the right to examine the property of a prisoner entering the institution to ascertain whether there is any contraband therein. Moreover, it does not appear that there is anything about which to complain, thus there is no duty owed to the plaintiff under 28 U.S.C. § 1361.

█ Fulwood alleges in the second paragraph of the complaint that he had an argument with the Chaplain. It is impossible to determine what the exact nature of his complaint is in this regard. Moreover, it is not at all apparent what this has to do with the named defendants. There is nothing stated in the second paragraph upon which relief could be granted.

In the third paragraph of the complaint Fulwood claims that a newspaper clipping was taken from him by an officer who informed him that it was contraband. He further claims that he has been unsuccessful in obtaining a copy of the rules and regulations of the penitentiary in this regard.

In 18 U.S.C. § 1791, the statute dealing with traffic in contraband articles, it is provided as follows:

"Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom any thing whatsoever, shall be imprisoned not more than ten years."

The applicable regulation, 28 C.F.R. § 6.1 provides:

"The introduction or attempt to introduce into or upon the grounds of any Federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the warden or superintendent of such Federal penal or correctional institution is prohibited."

In regard to 18 U.S.C. § 1791 and 28 C.F.R. § 6.1, it is stated in Carter v. United States, 333 F.2d 354, 355–356 (10th Cir. 1964), as follows:

" * * * In the exercise of its law-making function, Congress has committed to the Attorney General the 'control and management' of Federal penal and correctional institutions, and has vested him with the duty and authority to 'promulgate rules for the government thereof.' 18 U.S.C. § 4001. In the performance of his statutory duty, the Attorney General undoubtedly may provide by regulation that nothing shall be brought into or taken out of a Federal penal institution without the knowledge and consent of the warden or superintendent of such institution. * * * "

In United States v. Ruckman, 169 F. Supp. 160, 163–164 (S.D.W.Va.1959), it is stated in relation to 28 C.F.R. § 6.1, as follows:

" * * * The Attorney General has by regulation prohibited the trafficking of any thing unless the Warden or Superintendent gives consent, a reasonable regulation enabling the men in charge of the various institutions to know what is coming in or going out of their prisons. The regulation clearly limits itself to the authority delegated by the Act of Congress,

* * * "

█ Thus it is not proper to introduce any thing into a federal penitentiary without the knowledge and the consent of the warden. From this it is apparent

that there is nothing to the third paragraph of the complaint.[1]

In the fourth paragraph, Fulwood states that he received a letter from his Congressman in which was enclosed a letter "from Mr. Myrl Alexander stating that he did not object to the contents of the Muslim literature, but the amount petitioner had created a hazard to the living condition," which statement Fulwood claims is false. Fulwood also complains that he was not allowed to subscribe to the newspaper "Muhammad Speaks."

■ As to the newspaper, this is highly inflammatory material and any such refusal is justified. Long v. Katzenbach, supra, 258 F.Supp. at 93; Desmond v. Blackwell, 235 F.Supp. 246, 249 (M.D. Pa.1964). The fire hazard issue is too vague. In any event, prison authorities are certainly justified in limiting the amount of material an inmate may keep in his cell to reduce a fire hazard to the entire population. The conclusory allegation that the entire administration is hostile to the Muslim inmate is meritless.

The portion of the fifth paragraph complaining about the treatment of another inmate has nothing to do with the instant case and certainly does not show any discrimination towards Fulwood. It is further claimed that on June 17, 1966, he "was called before the disciplinary board for 'telling another inmate to do something in this institution,'." He then claims he was placed in punitive segregation and did not receive anything to eat because the food served did not conform with his dietary laws.

■ Defendants' Exhibit E–2 is the disciplinary report concerning the incident complained of. The report reveals that Fulwood stated that he told another inmate to make a poster and that neither he nor the other inmate had obtained permission to construct it or have it in their possession. The said Exhibit E–2 shows that it was directed that Fulwood be confined to segregation for having contraband. There is clearly no claim here.

■ Exhibit F shows that Fulwood refused offered meals on nine occasions, from June 17, 1966 to June 20, 1966. He makes the bold assertion that everything that was served was forbidden by his dietary laws. Such a conclusory allegation is not sufficient. Moreover, this Court has obtained a copy of the menu of food Fulwood would have been offered on the days in question, which menu will be filed as a part of the record of this case. It appears that pork was served on two of the nine occasions, but what else Fulwood is objecting to is impossible to ascertain. It is clear that the allegation that everything served was forbidden by his dietary laws is a sham. Fulwood has slanted everything in an attempt to substantiate his claim of discrimination. Such tactics are unimpressive. It appears this whole complaint is nothing more than an attempt to harass the officials in whose custody he is now confined.

■ The final paragraph is also meritless. It contains nothing but grandiose statements that his constitutional rights have been violated and a request for a hearing to save his life. It is evident that Fulwood does not like to be disciplined. The complaint completely fails to state a cause of action upon which relief can be granted. Fulwood appears to forget that the right to practice a religion is subject to limitations protective of prison security and discipline or other legitimate prison interests. Walker v. Blackwell, 360 F.2d 66 (5th Cir. 1966).

Accordingly, the complaint will be dismissed. In light of this, the request for appointment of counsel will be denied.

---

1. It should be noted that the inmates, as part of their orientation, are instructed as to these regulations.