**UNITED STATES of America**

**v.**

**Jessie James WHITE.**

**Cr. No. 25582.**

United States District Court
N. D. Georgia,
Atlanta Division.

Dec. 26, 1968.

Theodore E. Smith, Asst. U. S. Attorney, Atlanta, Ga., for plaintiff.

Paul L. Wayman, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Defendant, a federal prisoner, was indicted for violation of 18 U.S.C.A. § 1791, which provides:

> "Whoever, *contrary to any rule or regulation promulgated by the Attorney General,* introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom *anything whatsoever,* shall be imprisoned not more than ten years." (Emphasis added.)

The violation charged is framed as a violation of a certain prison regulation relating to

> "TRAFFIC IN CONTRABAND ARTICLES IN FEDERAL PENAL AND CORRECTIONAL INSTITUTIONS. § 6.1. *Consent of warden or superintendent required.* The introduction or attempt to introduce into or upon the grounds of any Federal penal institution or the taking or attempt to take or send therefrom *anything whatsoever without the knowledge and consent of the warden* or superintendent of such Federal penal or correctional institution is prohibited." 28 C.F.R. Chapter I, Part 6. (Emphasis added.)

18 U.S.C.A. § 1791 is attacked as delegating to the Attorney General (and his wardens) the power, not merely to set standards as to what shall be contraband, but to declare that contraband shall exist, with full criminal consequences, at his whim or notion at whatever time he should choose. Defendant urges that the Attorney General has in fact done this by 28 C.F.R. Chapter I, Part 6, as italicized above, in prohibiting the transmission of *anything whatsoever,* and thereby allowing a warden to declare any act of transmission criminal at any time.

■■ A legislative body may validly provide a criminal penalty for violations of regulations which it may empower administrative agencies to enact. Avent v. United States, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202 (1924); McKinley v. United States, 249 U.S. 397, 39 S.Ct. 324,

63 L.Ed. 668 (1919). As to the statute before the court, it was declared constitutional by the Court of Appeals for the Tenth Circuit in Carter v. United States, 333 F.2d 354 (1964). In an opinion by Chief Judge Murrah, it was said:

"We know, of course, that Congress may not penalize the violation of an administrative rule or regulation which it has no constitutional power to authorize. See: Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446; and Schechter [Poultry] Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. It is equally clear, we think, that Congress may penalize the violation of an administrative rule or regulation which it is constitutionally empowered to authorize. See: United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563. In the exercise of its law-making function, Congress has committed to the Attorney General the 'control and management' of Federal penal and correctional institutions, and has vested him with the duty and authority to 'promulgate rules for the government thereof.' 18 U.S.C. § 4001. In the performance of his statutory duty, the Attorney General undoubtedly may provide by regulation that nothing shall be brought into or taken out of a Federal penal institution without the knowledge and consent of the warden or superintendent of such institution. And, the regulation does not lose its administrative character simply because Congress has seen fit to make its violation a public offense. See: United States v. Grimaud, ibid; and United States v. Ruckman, D.C., 169 F.Supp. 160. The validity of the regulation is unquestioned here—the power of Congress to penalize its violation is unquestionable." [1]

There is no merit, therefore, to defendant's motion to dismiss.

 Defendant also urges that he was deprived of his right to counsel in that he was forced to confer with his attorney in a crowded visiting room. Defendant offers no authority for dismissal on such ground, and the court knows of none.

Defendant's motion to dismiss the indictment is denied.

---

1. With all deference to the wise and learned Chief Judge who wrote this opinion, this court would, if left to its own devices, conclude that he is wrong about this statute, at least as relates to this rule, although for an entirely different reason: Admitting the correctness of Judge Murrah's decision on the power of Congress to delegate rule-making power and to punish the violation of rules so made, we think Congress has authorized and the Bureau of Prisons in this instance has adopted a rule which is so vague and indefinite as not to advise a possible violator as to what he may be charged with. The rule attempts to forbid the introduction into a prison of "anything whatsoever" without the consent of the warden. It applies not only to prisoners, but to lawyers, visitors, or anyone else who comes on the prison grounds, and leaves it to the uncontrolled whim and discretion of the warden as to whom he will prosecute and as to what articles, however innocuous. Supposedly, with respect to prisoners, he could insist that they come into the prison stark naked. With lawyers and visitors, however, we think reason, and hence the Constitution, requires that they at least be allowed to bring fountain pens, shoes, and some modicum of clothing, and yet under the interpretation which this decision would permit, they risk federal prosecution in doing so, and this without any knowledge, or means of knowledge, as to what is permitted and what is prohibited. Assuredly, prison officials must be allowed to prohibit contraband on prison grounds, and this court does not profess to know what the language of the rule should be; but surely, to pass constitutional muster, it must define contraband as something more definite than "anything whatsoever". See Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285, and cases cited.