UNITED STATES, Appellee

v

DAVID W. MAGLITO, Seaman Recruit, U. S. Navy, Appellant

20 USCMA 456, 43 CMR 296

No. 23,420

April 9, 1971

*Captain Paul A. Reichs,* USMCR, argued the cause for Appellant, Accused.

*Captain John J. Reilly,* USMCR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

### Opinion of the Court

QUINN, Chief Judge:

A quantity of marihuana, found in a paper bag in the accused's possession, was admitted in evidence at trial, over defense counsel's objection. On this appeal, as at trial, the accused contends that the evidence was obtained by illegal means.

Barracks 37 at the Naval Station, Long Beach, California, was occupied by persons under some form of "restraint." Some were assigned to the barracks in execution of nonjudicial punishment imposed under Article 15, Uniform Code of Military Justice, 10 USC § 815; others were on "legal hold." Apparently, the accused belonged in the latter category. While the two groups had different regimens, all occupants of the barracks were subject to a procedure invoked against the accused on his return to the facility at about 2:00 a.m., September 14, 1969.[1]

The accused entered the barracks carrying a brown paper bag. The

---

[1] The military judge's ruling on the admissibility of the evidence came before certain material testimony was presented. However, the parties and the Court of Military Review considered the correctness of the ruling in light of the totality of the evidence; we have, therefore, taken the same approach. Cf. United States v Simpson, 17 USCMA 44, 37 CMR 308, footnote 2 (1967).

Master-at-Arms, Commissaryman Second Class John F. Treat, asked him what was in the bag. Informed that it contained civilian clothing, Treat requested the accused to display the contents. According to Treat, whose testimony was corroborated by defense witnesses, occupants of Barracks 37 were not allowed possession of civilian clothing. If an occupant returned to the barracks with such clothing, he was required to put it into a paper bag about the same size as the one in the accused's possession; the bag would be sealed, identified with the owner's name, and "placed in [locked] storage." Treat further testified that other things were "not allowed" to be brought into the barracks, and that persons seeking entry were required to disclose the contents of packages in their possession to make "sure the proper things are in there."

Instead of complying with Treat's request, the accused "took off." Treat pursued him and "brought him back" to the office, where he ordered the accused to display the contents of the bag. The accused "refused" to comply. Treat called the Station Master-at-Arms. On his arrival at the office, he and Treat "had" the accused "open the bag" and remove the contents, which included about a pound of marihuana.

The Fourth Amendment to the Constitution of the United States protects individuals against "unreasonable" intrusion by the Government into the privacy of their persons and effects. Generally, a search of private property, without the individual's consent or without previous authorization by competent authority, is unreasonable if not predicated upon probable cause and justified by exigent circumstances. See United States v Herberg, 15 USCMA 247, 35 CMR 219 (1965); United States v Decker, 16 USCMA 397, 37 CMR 17 (1966). The accused urges this principle upon us and presses for a conclusion that there was no probable cause to examine the contents of his bag. His argument disregards the nature of the barracks in

which he was quartered and to which he was seeking entry. That circumstance, however, is crucial to the disposition of the appeal.

Without exploring the ramifications as to particular rights, it may be acknowledged that persons in confinement are not, by reason thereof, deprived of all their constitutional rights. See Sostre v Rockefeller, 312 F Supp 863 (SD NY) (1970), modified, Sostre v McGinnis, — F2d — (CA 2d Cir) (1971), 39 U. S. Law Week 2500. We also assume, without deciding, that Katz v United States, 389 US 347, 19 L Ed 2d 576, 88 S Ct 507 (1967), has sapped Lanza v State of New York, 370 US 139, 8 L Ed 2d 384, 82 S Ct 1218 (1962), of so much of its vitality as to make it no longer safe to construe that case as support for the view that "an inmate of a prison has thereby certainly lost some constitutional rights, including the protection . . . against unreasonable searches and seizures." United States v Follette, 282 F Supp 10, 13 (SD NY) (1968), affirmed, 418 F2d 1319 (CA 2d Cir) (1969). For purposes of this appeal, we accept the constitutional requirement that a search and seizure must not be "unreasonable" as the standard by which to measure the legality of what was done here.

Prison authorities have large discretion to require "whoever may seek admission into the jail to submit their persons to a proper, orderly examination or search." 41 Am Jur, Prison and Prisoners, § 5, at page 888. Fulwood v Alexander, 267 F Supp 92 (MD Pa) (1967); see also 18 USC § 1791. We need not choose sides in the on-going judicial controversy as to the scope of the exercise of discretion in regard to visitors, as distinguished from returning inmates, because we regard as incontrovertible the reasonableness of a requirement that a returning inmate submit to a search of packages in his possession, without regard to whether there is probable cause to believe the package contains articles directly or potential-

ly inimical to prison security and discipline. Compare Carter v United States, 333 F2d 354 (CA 10th Cir) (1964), with United States v White, 295 F Supp 893, footnote 1, at page 894 (ND Ga) (1968). It is not only reasonable, but essential that articles in the possession of a returning inmate be taken from him if they can be destructive of, or harmful to, the safe and proper operation of the facility. Fulwood v Alexander, supra, at page 94. Actions of this kind are reasonably calculated to effectuate a Government interest other than the discovery of evidence of crime; as such, they "do not constitute a search within the meaning of the Fourth Amendment" and do not become a search "merely because in the course . . . [thereof] evidence is discovered." United States v Laub Baking Co., 283 F Supp 217, 225 (ND Ohio) (1968).

Of course, the accused was not a prison inmate. In fact, his status as a "legal hold" may have ▮ entitled him to different treatment from those occupants quartered in the barracks in execution of Article 15 punishment. However, the accused was an inmate of a restricted barracks. Knowing the character of the facility he could not reasonably expect to be free of inspection on returning to it. On the contrary, the only reasonable expectation as regards this kind of facility is that a person entering with a package would be required to disclose its contents to guard against unauthorized introduction of dangerous weapons or other articles conducive to escape or disruption of the normal operation of the facility. Fulwood v Alexander, supra; Denson v United States, 424 F2d 329, 331 (CA 10th Cir) (1970).

Appellate defense counsel challenges Treat's right to inspect any incoming parcel on the ground there was no proof that such inspection was authorized by order or regulation. Treat did not mention any order or regulation on the subject, but he did refer to established "procedures when men in the restraint area return with civilian clothes" and to a prohibition against introduction into the barracks of other things "that are not allowed." Defense witnesses, who were inmates of the barracks, corroborated the existence of the practice. One witness acknowledged there was a "policy" against retention of civilian clothes, and he had "seen numerous people asked what was in their bags," although he had never seen the bags "actually checked." Another witness testified that occupants were "not allowed to bring civilian clothes" into the barracks; such clothing was put into a paper bag and placed "upstairs in the linen locker." Confinement personnel may properly enforce "established practice, reasonably designed to promote the discipline of the institution." Stroud v United States, 251 US 15, 21, 64 L Ed 103, 40 S Ct 50 (1919). We conclude, therefore, that the marihuana was obtained by lawful means and was properly admitted into evidence.

At oral argument we asked counsel to consider a question raised by the opinion of the Court of Military Review. The specification of Charge I alleged that the accused willfully disobeyed an order "to come into the MAA Office . . . to have his paper bag examined." Although it affirmed the findings of guilty without modification, the Court of Military Review commented on what it described as a "minor variance" between the pleading and the proof. It observed there was insufficient evidence that the accused had been ordered "to come into the MAA Office," but that there was "convincing proof" that the accused had been ordered, but willfully refused, to show the contents of the paper bag.

Some testimony indicates that after Treat first asked the accused to expose the contents of the bag, the accused made a "beeline for the front door." Treat pursued him and "brought him back, and sat him in the office." While it is arguable that this testimony can support an inference that an order of the nature alleged in the specification was involved in the process of bringing the accused back to the office, we put aside the matter because of some

**459**

doubt as to whether the Court of Military Review predicated its determination upon an independent finding of fact or upon its view of the legal sufficiency of the evidence.

In our opinion, the allegation in the specification as to the purpose for the accused's appearance at ■ the office fairly implies that the accused was personally to display the contents of the paper bag. As the Court of Military Review correctly noted, the evidence compellingly demonstrates that, at the office, the accused was ordered by Treat to display the contents of the bag, but refused. True, ultimately, the accused removed the contents from the bag in Treat's presence, but that act did not expunge his earlier willful disobedience of Treat's order. Thus, so much of the court-martial's findings of guilty as include the allegation that the accused did not obey the order for examination of his paper bag can properly be affirmed. See United States v Crawford, 4 USCMA 701, 16 CMR 275 (1954). While the Court of Military Review should have modified the findings to reflect the change, the change itself does not affect the nature or the stigma of the offense or the sentence. Cf. United States v Thurman, 10 USCMA 377, 381, 27 CMR 451 (1959); United States v Dunn, 9 USCMA 388, 390, 26 CMR 168, footnote 1 (1958). We need not, therefore, return the record of trial to the Court of Military Review for further proceedings, but can appropriately conclude the appellate review with the caution that the modification of the findings be noted in the final court-martial order.

The decision of the United States Navy Court of Military Review is affirmed.

Judge DARDEN concurs in the result.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I agree that the accused's conviction for possession of marihuana (Charge II) may be affirmed. I disagree, however, with the affirmance of the conviction under Charge I—willful disobedience of a lawful order.

The specification of Charge I alleges that the accused:

". . . having received a lawful order from Commissaryman Second Class TREAT, U. S. Navy, his superior petty officer, to come into the MAA Office, . . . to have his paper bag examined, did, on or about 0215, 14 September 1969, willfully disobey the same."

A majority of the Court of Military Review, upon reviewing and analyzing the evidence relating to Charge I, held:

"We are unable to find in this record sufficient evidence showing beyond a reasonable doubt that the accused willfully disobeyed a lawful order of Commissaryman Second Class Treat, U. S. Navy, '. . . to come into the MAA Office . . . to have his paper bag examined . . .' as alleged in the specification of Charge I."

Despite this *finding of fact,* that court, unaccountably, affirmed the conviction on the ground that the accused disobeyed some previous order by Treat to show him the contents of the bag. The difference between the specification and their ulimate finding was held to be only a minor variance. The dissenting member of the Court of Military Review found the evidence insufficient to uphold the findings of guilty of Charge I. Since he also believed that the search was illegal he would have set aside the conviction for both offenses and ordered them and the sentence dismissed.

The Court of Military Review may affirm only such findings of guilty as it finds correct in law and fact. Article 66(c), Uniform Code of Military Justice, 10 USC § 866. Where it finds the evidence insufficient, it may not order a rehearing. Article 66(d), Code, supra. The finding in this case that the accused did not disobey the order alleged in the specification was clearly one of fact—what other conclusion can be attributed to the statement "We are unable to find in this record *suffi-*

cient evidence showing beyond a reasonable doubt." (Emphasis supplied.) Reasonable doubt refers to questions of fact not of law. In my opinion, the affirmance by the Court of Military Review, of the accused's conviction of Charge I, is not legally sustainable. Article 66(c), (d), Code, supra.

This Court is similarly restrained from affirming the accused's conviction under Charge I, by virtue of the finding of fact by the Court of Military Review. As we said in United States v Phifer, 18 USCMA 508, 510, 40 CMR 220 (1969):

> " '(W)e are bound by purely factual determinations of the board of review (United States v Judd, 10 USCMA 113, 27 CMR 187 [1959]; United States v Remele, 13 USCMA 617, 33 CMR 149 [1963]), *unless such conclusions are arbitrary and capricious, so as to amount to an abuse of discretion* (United States v Wheatley, 10 USCMA 537, 28 CMR 103 [1959]) . . . .' (United States v Baldwin, 17 USCMA 72, 77, 37 CMR 336 [1967].) (Emphasis supplied.)"

The finding of fact in this case is not *arbitrary and capricious.* Treat himself testified that after he took the accused to the MAA office, he had someone call for the Base Master-at-Arms. When the latter arrived, Treat testified:

> "A. The accused was told to open up the bag. He opened up the bag himself and reached his hand in and he pulled out the contents.[1]

> "Q. Was this pursuant to your orders?

> "A. Yes, sir."

While Treat also testified that he had earlier requested that the accused

---

[1] The contents of the bag formed the basis for the specification of Charge II alleging possession of marihuana.

display the contents of the bag, and that the accused did not at once comply, this is not necessarily sufficient to sustain this conviction.

In United States v Woodley, 20 USCMA 357, 43 CMR 197 (1971), that accused was given an order, by his sergeant, to report to the ammunition detail that he had worked on before. The accused replied that he did not have to do anything he did not want to do. After the sergeant repeated the order twice within a period of approximately five minutes, Woodley started back in compliance with the order. In holding Woodley's plea of guilty, to a charge of disobedience of the order, to be improvident, we said, at page 359:

> "Woodley's testimony unmistakably shows that although he was resentful and he acted after some brief delay, he did begin to comply with Sergeant Cooper's order. Not every order requires immediate action. Showing of a delayed compliance with some order may be enough to overturn a disobedience conviction. United States v Clowser, 16 CMR 543 (AFBR 1954); United States v McCrimmon, 15 CMR 726 (AFBR 1954)."

The accused's ultimate compliance with Treat's order in this case amply supports the Court of Military Review's finding that there was insufficient evidence in the record to sustain the finding that the accused willfully disobeyed the order of Treat "to come into the MAA Office, . . . to have his paper bag examined."

I would reverse the accused's conviction of Charge I and order the Charge and its specification dismissed. Since I believe that the accused properly stands convicted of Charge II, I would direct that the Court of Military Review reassess the sentence on the basis of that finding.