**UNITED STATES**

v.

**Airman John J. BARRETT, Jr., FR 014–52–0838, United States Air Force.**

**ACM 22825.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 9 April 1980.

Decided 30 April 1981.

Appellate Counsel for the Accused: Colonel Larry G. Stephens, Colonel George R. Stevens and Major Edward Bingham Miller. Captain Richard T. Brown filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel James P. Porter and Captain Richard O. Ely, II.

Before POWELL, KASTL and MAHONEY, Appellate Military Judges.

## DECISION

POWELL, Senior Judge:

Contrary to his pleas, the accused was convicted by a general court-martial with members of wrongful use and possession of marijuana and wrongful communication of a threat, violations of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence is a bad conduct discharge, confinement at hard labor for eighteen months, forfeiture of $299.00 per month for eighteen months and reduction to airman basic.

Among the errors assigned, appellate defense counsel claim that a pipe containing marijuana residue, which was discovered during a search of the accused conducted when he was apprehended, was illegally obtained and therefore was erroneously admitted into evidence. They contend that the apprehension of the accused was unlawful because it was not supported by probable cause and the information providing probable cause was acquired in violation of the accused's rights under Article 31, Code, 10 U.S.C. § 831, *supra*. They further assert that the search of the accused's jacket where the pipe was found was not incident to his apprehension. We disagree.

The record discloses that on 11 October 1979 an incident occurred in the bomber alert area on Loring Air Force Base, Maine. The several individuals involved were Air Force security policemen who were performing security police duties at the time. The accused and an Airman Brown were performing close-in sentry duties on posts "Bomber 1" and "Bomber 2," respectively. On the same shift, Airman First Class Johnson was on a walking post guarding the perimeter of the bomber alert area. At approximately 2200 hours, Johnson left his post and went toward the gate shack of "Bomber 1," which was located 150 to 200 feet from his perimeter post. As he approached the gate shack, the door opened and he detected the smell of marijuana smoke. He saw Airman Brown outside, and the accused inside, the shack. Johnson, who had smoked marijuana on at least two occasions, inquired: "You guys aren't doing what I think you were doing, were you?" He received an affirmative answer from the accused. Johnson returned to his post and from 10 to 20 minutes later, again approached the accused near "Bomber 1" and asked a similar question: "Are you guys doing what I think you were doing?" The accused gave an affirmative answer.

A short time later, Johnson reported to his supervisor, the bomber area supervisor, Technical Sergeant Perisie, that he had smelled marijuana and that Brown and the accused were smoking marijuana while on duty. Perisie contacted the shift commander, Second Lieutenant Petro, and the flight chief, Technical Sergeant Bridges, and reported Johnson's allegation. When Petro and Bridges arrived at the building where Johnson and Perisie were located, Bridges talked to Johnson. Johnson told him that while he was on duty he approached the gate shack where the accused and Brown were posted. As the door to the shack opened, he smelled marijuana. Johnson then inquired: "Are you guys doing what I think you're doing?" He also told Bridges: "One of the others stated, 'Yes, we were,'" meaning smoking marijuana." Bridges had known Johnson for one year and considered him reliable.

Upon the accused's and Brown's return to the bomber alert area from a meal break, Bridges apprehended them. At Petro's request, Staff Sergeant Griffin searched the accused. The accused was wearing a security police jacket which was removed and placed nearby. Griffin found no incriminating evidence on the accused and proceeded to search the jacket. In an inside pocket he found the pipe containing marijuana residue. The pipe and evidence of its contents were admitted into evidence over defense's objection.

A search conducted as an incident of lawfully apprehending a person is a lawful search and relevant evidence properly seized as a result thereof is admissible against an accused. Manual for Courts-Martial, 1969 (Rev.), paragraph 152.[1] A lawful apprehension requires that the person making the apprehension be authorized to apprehend and that there be a "reasonable belief that an offense has been committed and that the person apprehended committed it." Article 7(b), Code, 10 U.S.C. § 807(b), *supra*; Manual, *supra*, paragraph 19a. Without this reasonable belief or probable cause, an apprehension and a search conducted incident to it are invalid. *United States v. Ness*, 13 U.S.C.M.A. 18, 32 C.M.R. 18 (1962). When the information

---

1. *See also*, Mil.R.Evid. 314(a) and (g).

upon which the probable cause is based has been provided by someone other than the apprehending person, circumstances tending to prove the informant's reliability and demonstrating that a crime had been committed by the person apprehended must be presented. *United States v. Wilson*, 6 M.J. 214 (C.M.A.1979). Further, probable cause must be based upon information which itself was legally obtained. *United States v. McCrary*, 18 U.S.C.M.A. 104, 39 C.M.R. 104 (1969); *United States v. Cooper*, 2 M.J. 367 (A.F.C.M.R.1977); Manual, *supra*, paragraph 152.

In challenging the probable cause for the apprehension, the defense asserts that there were no underlying circumstances communicated to Bridges which enabled him to reasonably conclude (1) that a crime was committed by the accused and (2) that Johnson was credible or his information reliable.[2] Defense counsel place Johnson in the role of an informant and contend that the determination of probable cause must be limited to evidence of that information known only to Bridges. They argue that Johnson's stated conclusions that he smelled marijuana smoke and that the accused and Brown were smoking marijuana were not sufficient circumstances to satisfy the requirements. *See, United States v. Dingwell*, 1 M.J. 594 (A.C.M.R.1975).

■ We find this view of Johnson's participation too restrictive. His involvement in the events leading to the apprehension of the accused was that of a security policeman engaged in the performance of his duties.[3] The same is true of Perisie, Bridges and Petro. Confirming what he

believed to be the commission of an offense and sensing a duty to disclose it, Johnson reported the incident to his supervisor. Bridges was entitled to rely upon the conclusions of a fellow security policeman with whom he had worked for a year.[4] The totality of information known to those policemen acting pursuant to their official duties could be considered in assessing probable cause for the apprehension.[5]

Johnson's experience in smoking marijuana on at least two previous occasions sufficiently qualified him to detect the smell of burning marijuana. His identification of this odor in the immediate vicinity of the accused and the confirming communication from the accused, when considered in the setting of the security posts in the alert area, support Johnson's conclusion that the accused was or had engaged in a criminal offense. The foregoing circumstances, Johnson's considered report of the incident to his supervisor, and the absence of any motivation to falsely accuse anyone, provided probable cause to apprehend the accused.

The defense further contends that the apprehension was unlawful because some of the information providing probable cause was illegally obtained. They claim that Johnson's questioning of the accused produced incriminating statements which were inadmissible against him because of Johnson's failure to warn him of his rights under Article 31(b), Code, *supra*.[6]

Recently, the Court of Military Appeals, in discussing the applicability of Article 31(b) stated:

---

2. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Llano*, 23 U.S.C.M.A. 129, 48 C.M.R. 690 (1974).

3. We reject any contention that because Johnson may have strayed from the exact boundary of his post without permission, he abdicated his position as an on-duty security policeman.

4. *United States v. Herberg*, 15 U.S.C.M.A. 247, 35 C.M.R. 219 (1965); *United States v. Bianco*, 189 F.2d 716 (3rd Cir. 1951).

5. *Williams v. United States*, 308 F.2d 326 (D.C. Cir.1962).

6. Article 31(b) of the Uniform Code of Military Justice provides:

    No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

[I]n light of article 31(b)'s purpose and its legislative history, the Article applies only to situations in which, because of military rank, duty, or other similar relationship, there might be subtle pressure on a suspect to respond to an inquiry. *United States v. Gibson*, [3 USCMA 746, 14 CMR 164 (1954)]. Accordingly, in each case it is necessary to determine whether (1) a questioner subject to the Code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) whether the person questioned perceived that the inquiry involved more than a casual conversation.... Unless *both* prerequisites are met, Article 31(b) does not apply. [emphasis added and footnote omitted].

*United States v. Duga*, 10 M.J. 306, 310 (C.M.A.1981).

■ Even conceding the officiality of Johnson's inquiry, we are convinced that the accused in no way perceived the conversation to be official interrogation or anything other than a casual inquiry.[7] We hold that Article 31(b) does not apply and therefore the evidence was admissible.[8]

■ We reject the defense argument that the search of the accused's jacket was not incident to the apprehension. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *United States v. Brashears*, 21 U.S.C.M.A. 552, 45 C.M.R. 326 (1972); and Manual, *supra*, paragraph 152. The acts of removing the accused's jacket and placing it within reach, in order to facilitate the search of his person, and searching it before returning it to him, were appropriate and reasonable. This procedure was a legitimate part of the search and did not place the jacket beyond its scope.

Although we find probable cause to uphold the apprehension and search incident thereto, there are important military aspects of this case which warrant further comment. The fact that this incident occurred in the bomber alert area and involved security policemen who were engaged in the performance of their duties is significant. An integral part of the Strategic Air Command's defense mission is to maintain the bomber alert force in a state of continual readiness to launch a strategic response. As a part of that mission, it is the responsibility of the security policemen to protect and defend the alert aircraft from possible damage or sabotage. In performing such duties they are required to be physically and mentally alert at all times. Insuring that preparedness to discharge their duties is an important command purpose, essential to the national defense. The detection and removal of any person or substance which would seriously interfere with the accomplishment of this legitimate purpose are real and immediate necessities. *United States v. Hessler*, 7 M.J. 9 (C.M.A. 1979). We question the reasonableness of any expectation of privacy by an individual who is performing duties of this nature and in this setting. Even if it were determined that there is such an expectation, the need to protect that privacy may be considerably outweighed by the command's purpose for any intrusion which is reasonably executed. *United States v. Harris*, 5 M.J. 44, 63 (C.M. A.1978). In such cases, there are special dangers which warrant special consideration of constitutional issues. *United States*

---

**7.** The fact that Johnson held the rank of Airman First Class (E–3) and the accused's rank was Airman (E–2) is of no significance under these circumstances in determining whether the accused felt any compulsion to respond to the inquiry or freely engaged in conversation with an equal. The two stood in the relationship of co-workers.

**8.** Because the defense did not contest the probable cause on this ground and did not object to the admission of the accused's responses at trial, the evidence of record pertaining to this issue was not fully developed prior to the ruling on the objection. We are satisfied from the evidence presented to the military judge in ruling on the admissibility of the evidence that the conversation with Johnson was perceived by the accused as casual and not official interrogation. Evidence of the responses was also presented without objection to the court members prior to findings. The evidence of the circumstances of the conversation presented during this phase of the trial also satisfies us that warnings under Article 31(b) were not required.

632

*v. Trottier*, 9 M.J. 337 (C.M.A.1980). *See United States v. Hessler, supra; United States v. Torres*, 22 U.S.C.M.A. 96, 46 C.M.R. 96 (1963); *United States v. Maglito*, 20 U.S.C.M.A. 456, 43 C.M.R. 296 (1971); *United States v. Blade*, 49 C.M.R. 646 (A.F. C.M.R.1974) *pet. denied*, 23 U.S.C.M.A. 663, 50 C.M.R. 903 (1975).

The remaining assigned errors have been carefully considered and are resolved adversely to the accused.

The approved findings of guilty and the sentence are

AFFIRMED.

KASTL and MAHONEY, Judges, concur.