UNITED STATES, Appellee

v.

JOHN R. HOLMES, Airman Second Class, U. S. Air Force, Appellant

6 USCMA 151, 19 CMR 277

152

No. 6400

Decided July 1, 1955

*Captain Cornell DeGrothy* argued the cause for Appellant, Accused. With him on the brief was *Colonel A. W. Tolen.*

*First Lieutenant Anthony Ortega, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Pursuant to the provisions of Article 67(*b*)(2) of the Uniform Code of Military Justice, 50 USC § 654, The Judge Advocate General of the United States Air Force has filed a certificate seeking review of certain questions of law in this case.

Airman Holmes, the accused, needed gasoline for his car. He decided to obtain it by "moonlight requisition." First, he got a twenty-five gallon drum, and then he proceeded to a parking lot at the Briggs Air Force Base. There, he went directly to a water sprinkler truck. He removed the cap and strainer

from the right saddle gas tank. Using a rubber hose, he siphoned gasoline from the truck's tank into the drum. As the transfer was in progress, it occurred to the accused that the loaded drum would be too heavy to carry. He left briefly to procure a dolly upon which to transport the drum. Shortly after returning, he decided to check the level of the gasoline in the drum. He lit a match.

When the Base firemen arrived at the parking lot, the cab of the sprinkler truck and that of a dump truck parked about two feet away were on fire. The accused was gone. The explosion that followed his match-lighting had set his pants on fire. He succeeded in pulling them off. In the process he dropped a letter addressed to him and a plastic card case which, among other things, contained his identification card. These, together with the gasoline drum and rubber hose, were found by firemen and turned over to Office of Special Investigation agents, Johnson and Del Valle, who had been called to the scene.

The agents telephoned the accused's squadron commander. At their request he came to the squadron area. He and the agents went to the accused's barracks to conduct a search of his belongings. Arriving at the barracks they saw two lights on. One was in the hallway and the other was in the shower room. They entered the shower room and found the accused preparing for a shower. He had a large bandage around his left leg. Johnson and Del Valle identified themselves as agents. Johnson asked the accused to accompany them to his bunk. Neither the agents nor the squadron commander advised the accused of his rights under Article 31, 50 USC § 602. At the accused's bunk, Johnson asked the accused, "to show . . . [him] the clothes that he had worn that evening." The accused "showed" him a fatigue uniform, a pair of service shoes, and black socks. Johnson smelled these articles. It was his "observation" that they had an odor "of gasoline" about them.

In the course of "this first contact," Johnson asked the accused why the bandage was on his leg. At that point in Johnson's testimony, defense counsel raised the following objection:

"Defense Counsel: At this time defense counsel will object to the question and answer as made by the witness and will move that all testimony relating as to questions and answers of the accused be stricken. It appears that the testimony thus far of this witness would indicate that he was making an investigation of this incident as part of his official duties. It appears that any questions or anything that was shown to the witness would be incriminating to the accused. If this testimony is introduced for the purpose of showing an alleged confession on the part of the accused, the rights of the accused have certainly been violated, in that he had not been warned of any right not to make statements or incriminate himself in any way whatsoever and defense counsel will move that such testimony as to the interrogation of the accused be completely stricken from the record and the remarks of this witness be disregarded by the court on those grounds."

Before ruling on the defense objection and motion to strike, the law officer asked trial counsel if he desired to be heard. Receiving a negative reply, the law officer questioned the agent on whether he considered the accused a "suspect." Johnson denied that he suspected the accused "from the legal aspect" before he went to the barracks to search his effects. He admitted, however, that when he saw the bandage on the accused's leg, he had a "faint suspicion" that he was probably involved in a crime. The law officer then ruled as follows:

"Law Officer: In the absence of a statement from the trial counsel, and in the absence of an affirmative showing relating to the statement, the objection of the defense counsel is sustained. At this time the court will completely disregard the testimony of this witness pertaining to any answer made by this accused, so far in his entire testimony. If the trial counsel desires a recess for the purpose of laying the proper foundation for this

154

information, that will be granted, otherwise you will proceed with the trial at the present time.

"Trial Counsel: As I understand it, all of this witnesses' (sic) testimony is to be stricken?

"Law Officer: Pertaining to any answer made by the accused, made to him. Not otherwise."

After the law officer's ruling, the court recessed for lunch. On resumption of the trial Johnson continued with his testimony. He related the circumstances under which three days later he obtained a written pretrial statement from the accused. He said he read Article 31 to the accused, and the accused indicated that he understood his rights. This statement was admitted into evidence over defense counsel's objection that the prosecution's evidence did not show that a crime had probably been committed by someone. In the statement the accused gave a full account of his abortive attempt to siphon gasoline from the sprinkler truck.

The court-martial duly returned a verdict of guilty of attempted larceny of twenty-five gallons of Government gasoline and of negligent damage to two military trucks. It sentenced the accused to dishonorable discharge, total forfeitures, and confinement at hard labor for one year and six months. On the recommendation of his staff judge advocate, the convening authority approved the sentence, but suspended the execution of the dishonorable discharge.

On appeal, a board of review considered the admissibility of Agent Johnson's testimony regarding the accused's identification of his clothing. Without deciding whether the testimony was admissible, the board of review concluded that, under the law officer's ruling, the testimony was stricken from the record and thereby effectively removed from consideration by the court members. It affirmed the conviction. The Judge Advocate General of the Air Force then forwarded the case to this Court for review of the following questions:

"(a) In view of the state of the record, was evidence concerning accused's identification of his clothing admissible in evidence?

"(b) If the above question is answered in the negative, did the law officer's ruling effectively remove the inadmissible evidence from the court's consideration?"

Fundamentally, the first question is whether Agent Johnson's request of the accused to identify his clothing is an "interrogation" within the meaning of Article 31 of the Uniform Code, and whether the accused's action in complying with the request is a "statement" within the purview of the Article. Our decision in United States v. Taylor, 5 USCMA 178, 17 CMR 178, provides the answer to the first part of the question. In that case, the accused was suspected of the unlawful possession of narcotics. Law enforcement agents, accompanied by the Officer of the Day, went to the accused's living quarters to conduct a search of his belongings. The accused was there. He was not informed of his rights under Article 31. But he was asked to point out his clothing. He complied. Among the articles he identified was a certain overcoat. The accused said that it was his. Two cigarettes containing marihuana were found in the coat. Although there was "no indication that the accused's remark was *compelled*," this Court held that the evidence of identification was inadmissible because the accused was not first advised of his rights under Article 31. Writing the principal opinion, Judge Brosman said (page 182):

"We are sure that once military law enforcement authorities, engaged in an official investigation of crime, have identified a suspect from whom they desire any sort of oral or written statement touching the subject matter of the investigation, they must, before proceeding with the investigation, provide the warning demanded by Article 31—if his statement is to be usable against him. To say that this places an insupportable burden on the investigative and enforcement agencies of military law is to talk nonsense. Thus, in the case before us now, the investigators con-

cerned would have lost nothing by pausing to inform the accused of his rights under Article 31, and of the offense of which he was suspected. Thereafter, if he declined to identify his clothing, they could (a) have sought identification from other occupants of the hut; or (b) looked for identification marks on the garments which would reveal their ownership. In any event, although a heavier burden had been placed by Congress on military investigators than is visible here, this Court—like the several Armed Forces—would nonetheless be bound by that mandate."

The facts relied upon in the Taylor case to support the conclusion of inadmissibility are almost on all fours with this case. Agents Johnson and Del Valle were law enforcement authorities; they were engaged in an official investigation of an incident which occurred under such circumstances as to indicate that a crime had probably been committed. In fact, Johnson was called from his home to investigate the incident. When he arrived at the scene he ordered a search of the area for "foreign objects." On receiving the accused's wallet and letter, and learning that they were found at the scene, he immediately called the accused's squadron commander to ask permission for, and assistance in, a search of the accused's effects. If, at that time, Johnson did not regard the accused as a suspect, he admittedly suspected his complicity when he saw the bandage on the accused's leg. Thus, the accused's status as a suspect was fixed before he was asked to identify his clothing.

One notable difference is apparent between the facts in the Taylor case and those in this case. There, the accused *orally* identified his coat. Here, the accused "showed" the agents his clothing. Is the difference one of substance or merely of form?

The Government contends that physical conduct is not a "statement." At a trial when a witness is asked a question to which he replies by nodding his head, that action constitutes his testimony. By the same standard, when a law enforcement agent asks a question "regarding the offense" of a person suspected of a crime, the suspect's reply is a statement, whether it consists of an oral declaration or a physical act. In either case, the reply is "an affirmative conscious act on the part of the individual affected by the demand" and therefore within the purview of Article 31. United States v. Rosato, 3 USCMA 143, 147, 11 CMR 143.

In United States v. Ball, 6 USCMA 100, 19 CMR 226, a majority of this Court were of the opinion that a request of an accused for a sample of his handwriting is not an "interrogation," and that a handwriting specimen provided by the accused in response to the request is not a "statement" within the meaning of Article 31. The author of this opinion dissented from that restrictive construction of the Article. However, the *Ball* case does not conflict with the conclusion here. The majority was careful to limit its holding to the facts in that case. At the trial the accused tried to establish that an earlier promise of leniency had induced him to provide the exemplars. The majority concluded that the specimens were admissible even if unlawfully induced. But it specifically set out certain reservations:

". . . In our view, these words distinctly signify language, or its equivalent, which has relevance to one's guilt or innocence because of its content—its truth or falsity—and not because of its manner of utterance or the like. Thus, we must hold that a handwriting specimen is inadmissible only when obtained under some form of compulsion from one accused or suspected of crime."

At least one of the reservations expressed in the *Ball* case is precisely applicable here. The accused's action in pointing out his clothing is the "equivalent" of language, which has "relevance" to the accused's guilt because of its "content." Moreover, there is a strong indication of "some form of compulsion." Consequently, the first certified question is answered in the negative.

Turning to the second question, the

board of review concluded that, because of the law officer's ruling, the inadmissible evidence was effectively removed from the court-martial's deliberation. In part, it reasoned that since neither counsel referred to the disputed evidence in subsequent arguments, the trial personnel believed the evidence was excluded from consideration. We reach an opposite conclusion.

We attach no significance to the fact that counsel did not mention the evidence in later stages of the trial. First, it was entirely proper to omit all mention of other admissions of the accused in the argument on the admissibility of the accused's written pre-trial statement. Defense counsel's objection to the statement's admissibility was based upon the failure of the Government to establish that the crime charged had probably been committed. Other admissions of an accused not made prior to, or contemporaneously with, the commission of the crime are not corroborative evidence of the crime. Manual for Courts-Martial, United States, 1951, paragraph 140a, page 251. United States v. Villasenor, 6 USCMA 3, 19 CMR 129. Thus, the disputed evidence was not relevant to the argument. A failure to mention it does not show an understanding that it was not in the case. Second, neither counsel made a closing argument. Hence, no inference can be drawn as to what evidence they believed was properly before the court.

Relying upon the language of the law officer's ruling, the Government contends that the word "answer" means "not only . . . oral replies but also . . . physical responses." As a general legal statement, the argument is unassailable. In fact, it directly accords with our discussion of the first certified question. However, in our opinion, the circumstances under which the word was used did not make its meaning plain to the court members. We believe there is at least a fair risk that the court-martial did not know it must disregard Johnson's testimony concerning the identification of accused's clothing. Any doubt in this respect must be re-solved in favor of the accused. United States v. Soukup, 2 USCMA 141, 7 CMR 17. Therefore, the second certified question must be answered in the negative. This answer requires reversal of the accused's conviction, notwithstanding other evidence of guilt. United States v. Taylor, supra.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside, and a rehearing is ordered.

Judge BROSMAN concurs.

LATIMER, Judge (dissenting):

I dissent.

It is perfectly plain that the act done by this accused, the "showing" of his clothing to Agent Johnson pursuant to Johnson's request, amounted to a statement. It was "language, or its equivalent." United States v. Ball, 6 US CMA 100, 19 CMR 226. That being the case, Agent Johnson had a duty to warn the accused of his rights under Article 31 of the Code before eliciting the identification of the clothing. Having failed to do so, the evidence of identification was inadmissible. United States v. Taylor, 5 USCMA 178, 182, 17 CMR 178.

In view of the fact that counsel at this level are not in agreement as to whether pointing to one's belongings is a statement, I am convinced there was no certainty at the trial level. Under those circumstances, the law officer's instruction was inadequate clearly to remove from the court-martial's consideration the evidence of clothing identification. However, that is not the end of my inquiry as this is an instance where the competent evidence compels a finding of guilt. I would, therefore, answer the questions in the same manner as do my associates but I would not grant a rehearing.

The offenses alleged occurred shortly after 9:00 p.m. on July 13, 1954. The fire caused an immediate alarm and the investigators found the accused's identification card and a letter at the scene

157

of the burning. Shortly thereafter they proceeded to his barracks and found him in the shower room. His leg, which had been burned, was heavily bandaged. Because of his condition, he was taken to the hospital the following day for treatment, and before the Doctor asked him any questions about his injury, he was advised fully of his rights under Article 31 of the Code. In spite of this warning, he gave an account of his activities but these statements were not offered in evidence. On July 16, 1954, he was again advised of his rights and he then executed a full confession. There was a showing that the confession was voluntary and no fact of any importance is in dispute. The confession was admitted as evidence and unless it can be held to be the product of the illegal act of the investigator, then there is no reason why it cannot be considered to support the findings.

The accused produced no testimony and the Government's evidence negates any supportable contention that the confession was induced in whole or in part by the accused's pointing out his belongings. Any connection between the improper act and the final confession is so attenuated as to be negligible. If, therefore, we eliminate the improper evidence or seek to measure its impact in this bundle of incriminatory testimony before the court-martial, it becomes clear that all reasonable men would be compelled to find this accused guilty. The most that can be claimed for the incompetent testimony is that it established the accused's wearing apparel smelled of gasoline. Without that in the record, the court had before it the accused's presence at the scene of the crime; an explosion and fire; a large recent burn, treated with vaseline and of sufficient degree to require hospitalization; a statement to the doctor as to the manner in which the injury was incurred, after a full and fair explanation to the accused that he need not make any statement concerning the offense; and then three days later, a full confession of the crime after a second warning. Without a dispute of any kind, and with no evidence to rebut the showing made by the Government or to establish that any testimony was obtained by compulsion, coercion or promises of benefit, I can find no probability that the incompetent evidence influenced the finding or the sentence.