UNITED STATES

v.

**Airman First Class Richard P. BOISVERT, Jr., FR 034–38–5978 1001st Civil Engineering Squadron Headquarters Command, USAF.**

ACM 21961.

U. S. Air Force Court of Military Review.

2 March 1976.

Appearances: Appellate counsel for the Accused: Colonel Jerry E. Conner and Ma-

jor Bruce R. Houston. Appellate counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

## DECISION

LeTARTE, Chief Judge:

Despite his plea, the accused was convicted of possessing lysergic acid diethylamide (LSD), in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892 and was sentenced to be discharged from the service with a bad conduct discharge, to be confined at hard labor for six months, to forfeit $200.00 per month for six months and to be reduced in grade to airman basic.

Appellate defense counsel have not filed a brief in this case but have invited our attention to several errors asserted by the accused in his request for appellate representation. We will limit our discussion to those issues wherein the accused contends that his rights under the Fourth Amendment and against self-incrimination were violated.

On about 3 June 1975, at Andrews Air Force Base, Maryland, Special Agent Joseph Rogan, Office of Special Investigations (OSI), informed Technical Sergeant Alexander Zion, the noncommissioned officer in charge of the Security Police Squadron Investigation Section, that an "unidentified informant" had reported that the accused had left the base to purchase a quantity of "THC"[1] and would be returning in two or three days. On 5 June, Sergeant Zion observed the accused in the Security Police Office talking to Staff Sergeant William Osborne.[2] Sergeant Zion immediately notified Agent Rogan who asked that a drug detection dog be obtained to examine the accused's car which Rogan identified as a green Fiat.

When the dog's handler, Sergeant James Sanders, reported to Sergeant Zion, he was told to check a green Fiat in the security police parking lot. However, Sergeant Sanders could not find a green Fiat. Instead, he checked a "red MG" upon which his dog, Sado, immediately alerted. Sanders described the ensuing events as follows:

> I went in and told Sergeant Zion. He made a phone call to Agent Rogan and the conversation—I'm not sure what was said. Sergeant Zion stepped out the door with me, with the phone in his hand, and said "There's got to be a green Fiat out there," and he pointed to one that was in front of the red one. He said "See if that's it," and I went out there and it was it. Sergeant Zion was behind me and we went around it. Sado alerted on a broken tail light on the right rear, and went around and alerted on the passenger door. At that time I told Sergeant Zion that there were two probable alerts.

During this period of time, Sergeant Osborne, acting on Zion's instructions, was carrying on a conversation with the accused so that he would not become aware of the activity in the parking lot. Osborne received at least two calls from Zion over the office intercom system. On the second occasion, Zion asked Osborne to "find out what kind of car [the accused] owned, if he had driven it and possibly where it was parked." Osborne then questioned the accused who indicated that he owned a Fiat and identified the car in the parking lot. Thereafter, Osborne relayed this information to Sergeant Zion who, according to Osborne, expressed "surprise" that "they'd missed it or hadn't seen it before."[3]

Upon being informed that Sado had alerted on a green Fiat, Agent Rogan called the Vice Base Commander, Colonel Pearce, and requested authority to search the car. Rogan advised Colonel Pearce

---

1. Agent Rogan described "THC" as the "active ingredient in marihuana." THC is the commonly used term for the substance "tetrahydrocannabinol" which is the active constituent of marihuana. *United States v. Owens*, 48 C.M.R. 636 (A.F.C.M.R. 1974), aff'd, 23 U.S.C. M.A. 700, 50 C.M.R. 906 (1975).

2. The accused was reporting a theft of money from his room.

3. Sergeant Zion's testimony substantially corroborated Osborne's recollection of the events except that Zion recalled that the only information he derived from Osborne was that the accused had driven his car to the parking lot.

that an informant who had previously provided information in the past, which had been substantiated by other sources of information concerning narcotics on Andrews Air Force Base, had told us on the 2nd of June '75 that [the accused] had gone to Massachusetts with $500 with which to purchase . . . THC, a derivative or the active ingredient in marihuana. I further related that [the accused] was then present in the Security Police Investigations Office on another matter, I believe I told him concerning the theft of monies, and that we had a marihuana detection dog, specifically Sado, Sergeant Sander's dog, run around . . . the car and that the dog had alerted on the vehicle. And I requested from him authority to search and seize. He granted me verbal authority.

Colonel Pearce testified that the "main" reason he authorized the search was because of his "confidence in [Sado's] ability to search out drugs." He indicated that he was familiar with Sado's past performances in detecting drugs, having had occasion to review cases where Sado had been involved, and that Sado was "extremely reliable." In fact, Colonel Pearce knew of "no past cases where [Sado had] had a false alert."

Armed with the authority to search the green Fiat, Agent Rogan advised the accused of his rights under Article 31, Code, supra, and to counsel, whereupon the accused indicated he desired to speak to a lawyer. He was then informed by Rogan of the search authority already granted Colonel Pearce and was asked to "produce the keys to his car." After the accused complied, his car was searched and a quantity of LSD discovered therein.

■ The first issue raised by the accused is whether probable cause existed to authorize the search of his vehicle. We find that it did. However, our opinion is grounded upon the evidence of the drug detection dog's alerts on the vehicle rather than the unidentified informant's tip. Clearly, the latter information was inadequate to justify the search. Not only was the informant's reliability not shown [4] but also his information provided insufficient basis for prudently concluding that contraband was located in the accused's car at that time. *United States v. Lidle*, 21 U.S.C.M.A. 455, 45 C.M.R. 229 (1972).

■ When a dog has been trained to detect the odor of drugs and this capability has been proven, sufficient probable cause exists to search any person or property upon which such a dog has alerted. *United States v. Unrue*, 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973), Cf, *United States v. Ponder*, 45 C.M.R. 428 (A.F.C.M.R. 1972), pet. den., 45 C.M.R. 928 (1972). Here, Colonel Pearce was personally familiar with Sado's ability to detect drug odors, and thus properly authorized the search in question upon this factor alone. Nevertheless, the accused claims that the search was tainted because of two preceding events: (1), his identification of the car and its location when questioned by Sergeant Osborne without proper advisement of his rights and (2), Agent Rogan's order that he produce the keys to the car after the accused had demanded his right to speak to an attorney. Although we agree that in both instances, under the circumstances of this case, the Government officials acted illegally, we do not find that these illegalities rendered the ensuing search unlawful.

■ Evidence obtained as the direct result of an earlier, unlawful intrusion has traditionally been barred from admission at trial. *United States v. Peurifoy*, 22 U.S.C. M.A. 549, 48 C.M.R. 34 (1973); *United States v. Delton*, 24 C.M.R. 734 (A.F.B.R. 1957). Furthermore, such an "unlawful intrusion" may consist of a previously obtained involuntary statement, or "physical act," as well as an unlawful search. *United*

---

4. Colonel Pearce was told that the informant's reliability had been substantiated by "other sources," but he was not furnished with any information upon which he could personally determine the reliability of these individuals or upon which he could judge the reasonableness of their opinion concerning the informant's credibility. *United States v. Starr*, 49 C.M.R. 508 (A.F.C.M.R. 1974), rev'd on other grounds, 23 U.S.C.M.A. 584, 50 C.M.R. 849, 1 M.J. 186 (1975).

820

*States v. Haynes*, 9 U.S.C.M.A. 792, 27 C.M.R. 60 (1958); *United States v. Holmes*, 6 U.S.C.M.A. 151, 19 C.M.R. 277 (1955); *United States v. Taylor*, 5 U.S.C.M.A. 178, 17 C.M.R. 178 (1954). However, with respect to this "exclusionary rule," the Manual provides:

Evidence is not considered as having been obtained as a result of the illegal acts merely because it would not have come to light but for those acts. Evidence is considered as having been obtained as a result of the illegal acts only if it has been acquired by an exploitation of those acts instead of by means sufficiently distinguishable to be purged of the taint of the illegality.

Manual for Courts-Martial, 1969 (Rev.), paragraph 152; *United States v. Peurifoy, supra; United States v. Moore*, 19 U.S.C.M.A. 586, 42 C.M.R. 188 (1970).

With these rules in mind, we find that the search of the accused's car was not blemished by any of the information illegally obtained from the accused. Although Sergeant Osborne's testimony tends to support the defense contention that the car would not have been located had the accused not revealed its location, this testimony was contradicted by both Sergeants Zion and Sanders. The latter witnesses were certain that Zion's discovery of the car's location did not result from any information gleaned from the accused through Osborne.

Secondly, the accused's act of surrendering his car keys to Agent Rogan did not contaminate the ensuing search. At this juncture, Sado had already alerted on the vehicle and the authority to search had been properly granted. Therefore, surrendering the keys merely facilitated that which would have occurred in any event.[5]

For the reasons stated, we find that the evidence seized from the accused's car was properly admitted in evidence against him.

The findings of guilty and the sentence are

Affirmed.

FORAY, Judge, concurs.

EARLY, Judge, absent.

---

5. [4] In addition, there is no possibility that the accused was otherwise prejudiced by these illegalities since the military judge correctly refused to consider either involuntary admis-sion as evidence of the accused's ownership of the vehicle. *United States v. Bennett*, 7 U.S.C.M.A. 97, 21 C.M.R. 223 (1956).