UNITED STATES, Appellee,

v.

Specialist Leslie M. NEWSON, United States Army, Appellant.

ARMY 9801681.

U.S. Army Court of Criminal Appeals.

6 March 2001.

For Appellant: Major Scott R. Morris, JA; Major Jonathan F. Potter, JA; Captain Daniel E. Goldman, JA (on brief).

For Appellee: Lieutenant Colonel Edith M. Rob, JA; Major Anthony P. Nicastro, JA; Captain Kelly D. Haywood, JA (on brief).

Before TOOMEY, Senior Judge, CARTER, and HARVEY, Appellate Military Judges.

OPINION OF THE COURT

CARTER, Judge:

An officer panel sitting as a special court-martial convicted appellant, contrary to her pleas, of making a false official statement and wrongfully and falsely making a permanent pregnancy profile, in violation of Articles 107 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 934 [hereinafter UCMJ]. The convening authority approved the ad-

judged sentence to a bad-conduct discharge and reduction to Private E1.

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, appellant asserts for the first time that, as a matter of law, nonverbal conduct may not form the basis for making a false official statement under Article 107, UCMJ. We disagree.

### Facts

Appellant was convicted of a violation of Article 107, UCMJ, in that she

did, at or near Fort Bliss, Texas, on or about 23 September 1997, with intent to deceive, make to SSG Jones, an official statement, to wit: that the said SPC Newson had been given a valid physical profile by a doctor at Fort Bliss, Texas due to pregnancy, or words to that effect, which statement was totally false, and was known by the said SPC Newson to be so false.

The evidence established that between 23 September 1997 and 7 October 1997, appellant presented her immediate supervisor, Staff Sergeant (SSG) Jones, with what purported to be a written permanent profile for a high risk pregnancy issued on behalf of Dr. Carlson, the chief of the obstetrics and gynecology department at the local Army hospital, on 23 September 1997. The terms of the written profile restricted appellant to "light duty" and required her physician's permission prior to performing "extra duties." Pregnant soldiers on Fort Bliss participated in a separate physical training program. Dr. Carlson testified that neither he, nor anyone on his behalf, issued a permanent pregnancy profile to appellant on or about 23 September 1997. No evidence was presented that appellant orally told SSG Jones, or any of her other supervisors, that she had a permanent pregnancy profile. The military judge gave the members the standard instructions for a false official statement, but did not define the term "statement." The defense team did not request an instruction on the meaning of "statement" or object to any of the instructions given by the military judge.

### False Official Statement

The issue presented is whether appellant's handing her supervisor a fraudulent written pregnancy profile, without speaking any words, may lawfully constitute the offense of making "any other" false official statement under Article 107, UCMJ. Neither appellate counsel cite any case directly addressing this issue.

Article 107, UCMJ, provides:

Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, **or makes any other false official statement** knowing it to be false, shall be punished as a court-martial may direct.

(Emphasis added).

■ Although the word "statement," in the context of making a false official statement, is not defined in either the *Manual for Courts–Martial* or the Military Judges' Benchbook,[1] other areas of military law have interpreted the term "statement" to include nonverbal conduct. Cases considering admissibility of confessions, or the results of searches of a servicemember's possessions, have considered nonverbal conduct by a suspect to be a "statement." *See United States v. Hilton,* 27 M.J. 323, 325 (C.M.A.1989) (asking airman suspected of blackmarketing in automobiles to produce the vehicle he ordered was a request for a nonverbal incriminating statement); *United States v. Wiggins,* 13 M.J. 811, 812 (A.F.C.M.R.1982) (videotape of airman exchanging drugs for money was a nonverbal statement of incriminating conduct), *rev'd in part on other grounds,* 14 M.J. 316 (C.M.A.1982) (summary disposition). Simply stated, an accused's nonverbal physical acts or conduct can constitute incriminating "statements" within the scope of Article 31, UCMJ, 10 U.S.C. § 831. *United States v. Butcher,* 1 M.J. 554, 556 (A.F.C.M.R.1975) (citing *United States v. Holmes,* 6 U.S.C.M.A. 151, 156, 19 C.M.R. 277, 282, 1955 WL 3434 (1955) (suspect of gasoline larceny who "showed" investigator clothes he was wearing, which contained odor of gaso-

---

1. *See Manual for Courts–Martial, United States* (1995 ed.) [hereinafter MCM], Part IV, para. 31; Dep't of Army, Pam. 27–9, Legal Services: Mili-

tary Judges' Benchbook, para. 3–31–1 (30 Sep. 1996).

line, made a nonverbal statement) and *United States v. Taylor*, 5 U.S.C.M.A. 178, 182–83, 17 C.M.R. 178, 182–83, 1954 WL 2592 (1954) (suspect made "statement" by pointing out his clothes, which contained marijuana, in response to investigator's question)); *see also United States v. Martel*, 19 M.J. 917, 927 (A.C.M.R.1985) (holding that a spouse's nonverbal acts, whether by expression or gesture, if communicative or intended to be communicative, may trigger spousal privilege).

In addition, the hearsay rule specifically defines a "statement" to include "nonverbal conduct of a person, if it is intended by the person as an assertion." Military Rule of Evidence [hereinafter Mil.R.Evid.] 801(a)(2); *see also United States v̇. Hughes*, 48 M.J. 700, 707–09 (A.F.Ct.Crim.App.1998) (child pulling down her panties was nonverbal conduct intended as an assertion of sexual abuse), *aff'd*, 52 M.J. 278 (2000).

*United States v. Ellis*, 31 M.J. 26 (C.M.A. 1990), could be characterized as a prosecution for making a false official statement involving nonverbal conduct. Appellant Ellis was responsible for maintaining survival kits in various aircraft and was pending administrative elimination for deficient performance of those duties. He had his girlfriend write an anonymous letter to his first sergeant suggesting that deficiencies in the survival kits were caused by the writer of the note in order to get Ellis into trouble. In fact, Ellis helped compose the anonymous note and delivered it to his unit in an attempt to avoid responsibility for his substandard performance. Our superior court held that Ellis's nonverbal conduct involving the anonymous note, which is similar to appellant's conduct, constituted the offense of making a false official statement. *Id.* at 27–28.

▇▇ Our superior court has also held that the phrase "makes any other false official statement" in Article 107, UCMJ, includes oral false official statements, even though the term "oral" is not expressly stated in the statute. *United States v. Caballero*, 37 M.J. 422, 424–25 (C.M.A.1993). Appellant's nonverbal conduct is similarly fairly embraced in

this Congressional prohibition against making *any other* false official statement.

▇▇ Considering the above precedents, we hold that a physical act or nonverbal conduct intended by a soldier as an assertion is a "statement" that may form the basis for a charge of making "any other" false official statement under Article 107, UCMJ, provided the remaining elements of that offense are satisfied. *See* UCMJ art. 107; MCM, Part IV, para. 31b. We further hold the military judge's failure to sua sponte define the term "statement" for the members was not plain error in appellant's case.[2] *See* Mil.R.Evid. 103(d); *United States v. Powell*, 49 M.J. 460 (1998). However, we will amend the language of appellant's false official statement specification to more accurately reflect her misconduct as established in the record of trial.

### Legal and Factual Sufficiency

▇ Appellant also asserts that the findings of guilty to making a false official statement is legally and factually insufficient. The government presentation of evidence in appellant's case was extremely disjointed. Nevertheless, considering the record as a whole, we are satisfied as to the legal and factual sufficiency of the evidence to support the findings of guilty as affirmed in our decretal paragraphs. *See* UCMJ art. 66(c); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

We have considered the remaining assignments of error and the matters submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

### Decision

This court affirms only so much of the findings of guilty of Charge I and its Specification as finds that appellant

did, at or near Fort Bliss, Texas, between 23 September 1997 and 7 October 1997, with intent to deceive, make to SSG Jones, an official statement, to wit: by presenting to SSG Jones a written permanent preg-

---

**2.** The court recommends that military judges use the Mil. R. Evid. 801(a)(2) definition of "state-

ment," or something similar to it, in false official statement cases involving nonverbal conduct.

nancy profile, dated 23 September 1997, which indicated that the said SPC Newson had been given a valid physical profile by a doctor at Fort Bliss, Texas, due to her high risk pregnancy, or words to that effect, which statement was totally false, and was then known by the said SPC Newson to be so false, in violation of Article 107, Uniform Code of Military Justice.

The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and the principles in *United States v. Sales,* 22 M.J. 305 (C.M.A.1986), the court affirms the sentence.

Senior Judge TOOMEY and Judge HARVEY concur.